UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN GIBSON, *Plaintiff*, v. DISTRICT OF COLUMBIA, *et al.*, *Defendants.* | Civil Action No. 16-1508 (RDM) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonathan Gibson was ordered to serve a term of four months imprisonment for violating the terms of his supervised release. In this action, he alleges that he should have been released on July 24, 2015, but was unlawfully held until July 27, 2015. Based on this wrongful detention, he asserts various claims against the U.S. Department of Justice; two employees of the U.S. Parole Commission, which is a component of the Department of Justice; the District of Columbia; and an employee of the D.C. Jail, which is operated by the District of Columbia through the D.C. Department of Corrections. Although the D.C. defendants have answered the amended complaint, the federal defendants have moved to dismiss or, alternatively, for summary judgment in lieu of answering. Dkt. 26. It is that motion that is currently before the Court, and, for the reasons explained below, the Court will GRANT the federal defendants' motion.

**I. BACKGROUND**

In early April 2014, Jonathan Gibson was released from federal prison and placed on supervised released.[1] Dkt. 26-2 at 2 (Krapels Decl. ¶ 12). A warrant for his arrest issued less

---

[1] The facts relevant to the resolution of this claim are not disputed by the parties unless noted.

than six months later after the Parole Commission found that he "had failed to submit to drug testing, and failed to comply with the requisite GPS monitoring" imposed as terms of his supervised release. *Id*. (Krapels Decl. ¶¶ 13–14). He was arrested on March 25, 2015, and appeared for a probable cause hearing before the Commission on April 20, 2015. *Id*. at 2–3 (Krapels Decl. ¶¶ 15, 17). At the hearing, Gibson applied to participate in the Parole Commission's "Short Intervention for Success [P]rogram" ("SIS Program"). *Id*. at 3 (Krapels Decl. ¶ 18). By completing the form application, Gibson "accept[ed] responsibility for the violations of supervision alleged . . . and agree[d] to waive [his] revocation hearing . . . contingent upon the Commission approving [him] for participation in the" SIS Program. Dkt. 26-3 at 1. The application explained that, if allowed to participate in the SIS Program, Gibson would receive "a prison sanction of [eight] months or less" and "an additional period of supervised release that [would] not exceed the maximum authorized supervised release term for the underlying offense of condition." *Id*. That period of supervision would include "the standard conditions of supervision" and two special conditions involving mental health and sex offender treatment. *Id.*

In signing the application, Gibson also acknowledged that "the Commission [wa]s not obligated to approve" him for the SIS Program, and that his "waiver d[id] not constitute an enforceable agreement with respect to any action the Commission [wa]s authorized to take by law or regulation." *Id*. Rather, if his application was not approved, his "waiver of the revocation hearing" would be treated as "void," and he would "be scheduled for a revocation hearing to occur . . . within [sixty-five] days from the date" of his arrest. *Id*. Gibson also acknowledged that, "if [his] application [wa]s approved, the Commission w[ould] issue a Notice of Action with a decision that [wa]s within the parameters of [his] . . . consent." *Id*. at 2. Finally, Gibson

2

acknowledged that he would not be allowed to "appeal the decision provided in the Notice of Action," but could request that the Commission amend the decision, if necessary, to correct any error "in determining [his] release date" or special conditions. *Id.*

The Parole Commission examiner recommended the approval of Gibson's application that same day, *id.*, and the Commission issued a Notice of Action accepting Gibson into the SIS Program on April 23, 2015, *id*. at 3–4.[2] The Notice of Action revoked Gibson's supervised release and directed that he "serve a new term of imprisonment of [four] months from March 25, 2015, the date the warrant was executed." *Id*. at 3. The Commission also ordered that Gibson complete an additional fifty-six months of supervised release subject to the special conditions identified in his application to participate in the SIS Program. *Id.* In setting forth the reasons for its actions, the Commission explained that Gibson had "accepted responsibility for the violations of supervision and agreed to a sentence of [eight] months or less," and that the Commission had "approved" him for the SIS Program and "sentenced [him] accordingly." *Id*.

During the period of imprisonment that followed the revocation of his supervised release, Gibson was held at the "D.C. Jail," a facility administered by District of Columbia's Department of Corrections (DOC). Dkt. 15 at 2–3 (Am. Compl. ¶¶ 3–4). Gibson alleges that "[t]he Records Office at D.C. Jail is responsible for ensuring prisoners are released on time." *Id*. at 3 (Am. Compl. ¶ 4). The Parole Commission and Bureau of Prisons (another component of the Department of Justice), however, must notify "custodians and jailers like DOC . . . of [a] person's release date." *Id*. (Am. Compl. ¶ 6). This information is conveyed to the prison authorities through Bureau of Prison's "Designation & Sentence Computation Center." *Id*.

---

[2] The Notice of Action reports that Gibson's application was approved on April 22, 2015, but the Notice of Action itself is dated April 23, 2015. Dkt. 26-3 at 3.

3

Gibson alleges "that the Notice of Action was a legally binding contractual agreement," *id*. at 4 (Am. Compl. ¶ 14), which obligated the Department "to ensure Mr. Gibson's release after four months of imprisonment," Dkt. 31 at 2. The Department breached this obligation, according to Gibson, because he was not released as he anticipated on July 24, 2015, but, rather, was held until July 27, 2015, with "no assurance that he would be released at any specified time." Dkt. 15 at 6 (Am. Compl. ¶¶ 20–21). Although he asserts claims against others, he suggests that fault lies with the Department of Justice because it allegedly failed to "timely inform DOC of [his] release date and instead left him to languish in D.C. Jail." *Id*. at 5 (Am. Compl. ¶ 16).

## II. LEGAL STANDARD

Because the Department relies on evidence outside the pleadings—namely, the full text of the application for the SIS Program and Notice of Action offered into evidence by the Department and the declaration of Helen Krapels, General Counsel of the Parole Commission, Dkts. 26-2, 26-3—the Court will apply the summary judgment standard. Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Holcomb*, 433 F.3d at 895; *Liberty Lobby*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The non-movant's opposition, however, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If his evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50.

### III. ANALYSIS

Although the amended complaint asserts a variety of claims against a variety of defendants, the issue before the Court is a narrow one. To start, Plaintiff concedes that Counts II, III, and V are premature as asserted against the federal defendants because he has yet to exhaust administrative remedies. Dkt. 31 at 1. The Court will, accordingly, dismiss those claims as against the federal defendants. In addition, the D.C. defendants have answered the amended complaint and have not moved to dismiss or for summary judgment. Dkt. 21 (District of Columbia); Dkt. 28 (Robilyn Brown). As a result, for present purposes that leaves only Count I, which is asserted against only the Department of Justice.

Count I alleges that Gibson entered into a binding contract with the Parole Commission, which, as noted above, is a component of the Department of the Justice; that the Commission agreed in the contract to ensure that Gibson was released at the end of his four month sentence; and that the Commission breached the agreement when it failed to effectuate Gibson's release on July 24, 2015. Dkt. 15 at 3–6 (Am. Compl. ¶¶ 10–24). The Department of Justice, in turn, disputes all of this. It contends that the Parole Commission did not enter into a binding contract with Gibson and that, even if it did enter a contract, it did not agree to take affirmative steps to ensure Gibson's release on the specified day. Dkt. 26-1 at 12–14. And, more generally, the Department asserts that Gibson has failed to allege any basis to conclude that it is the responsibility of the Parole Commission or the Bureau of Prisons to ensure that inmates are released from the D.C. jail once they have served their sentences. *Id.* at 13–14. In the Department's view, this is a tort case, and, accordingly, Gibson's claims must be evaluated in light of the procedural and substantive rules applicable to claims brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680.

The Court first concludes that it has subject-matter jurisdiction to adjudicate Gibson's claim against the Department for breach of contract. The Tucker Act constitutes a waiver of sovereign immunity for "claims founded upon 'any express or implied contract with the United States.'" *United States v. Mitchell*, 463 U.S. 206, 215 (1983) (quoting 28 U.S.C. § 1491). Although the U.S. Court of Federal Claims has exclusive jurisdiction over most contract claims against the United States, the district courts retain jurisdiction over contract claims seeking damages of less than $10,000. *See* 28 U.S.C. § 1346(a)(2). Because Gibson expressly limits his contract claim to "damages of less than $10,000," Dkt. 15 at 6 (Am. Compl. ¶ 24), this Court has jurisdiction over the claim.

6

Turning to the merits, the Court concludes that the Department has carried its burden of demonstrating that, based on the undisputed facts, the Parole Commission did not enter into a binding contract through which it agreed to guarantee Gibson's timely release from custody. Because this case involves an alleged contract with the federal government, the Court's analysis must be guided by the federal common law of contracts. *See United States v. Winstar Corp.*, 518 U.S. 839, 868–71 (1996) (applying "ordinary principles of contract construction and breach" to alleged contract with the United States); *Anderson v. United States*, 344 F.3d 1343, 1353 n.4 (Fed. Cir. 2003) ("It is well settled by long-standing precedent that the common law of contract governs the creation of a contractual relationship between the United States and a private party"); *Yee v. Jewell*, 228 F. Supp. 3d 48, 53–54 (D.D.C. 2017) ("[F]ederal common law of contracts applies to contracts with the federal government.") (citation omitted); *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 173 (D.D.C. 2007) ("[T]he agreement—like any contract with the federal government—is governed by federal common law."). Although not dispositive, the Federal Circuit has recognized that the Restatement (Second) of Contracts "reflects many of the contract principles of federal common law." *Long Island Sav. Bank v. United States*, 503 F.3d 1234, 1245 (Fed. Cir. 2007).

"To form an agreement binding upon the government, four basic requirements must be met: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Anderson*, 344 F.3d at 1353. The first of these requirements—mutuality of intent—requires "an objective manifestation of voluntary, mutual assent." *Id.* (citing Restatement (Second) of Contracts § 18 (1981)). This means that both parties must manifest a "willingness to enter into a bargain" and that "manifestation" must be sufficient "to justify

7

another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (quoting Restatement (Second) of Contracts § 24). Correspondingly, "[t]here is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations," and "neither party knows or has reason to know the meaning attached by the other . . . or . . . each party knows or each party has reason to know the meaning attached by the other." Restatement (Second) of Contracts § 20. And, likewise, "a manifestation of intention that a promise shall *not* affect legal relations may prevent the formation of a contract." *Id.* § 21 (emphasis added). A document that states that "it is not to be a legal agreement," for example, "may be read and given effect . . . to prevent any legal duty arising from the making of the agreement." *Id.* § 21 cmt. b.

Applying these concepts here, the Court concludes that the Parole Commission did not manifest the requisite intent to enter into a legally binding obligation to ensure that Gibson was released from custody on April 24, 2015. In applying to participate in the SIS Program, Gibson executed a waiver of his right to a revocation hearing. Dkt. 26-3 at 1. The application, however, expressly provided that Gibson's waiver did "not constitute an enforceable agreement with respect to any action the Commission [wa]s authorized to take by law or regulation." *Id.* There is, accordingly, no doubt that Gibson's application did not give rise to a binding legal agreement; rather, had the Commission declined to accept Gibson into the program, his remedy would have been to withdraw his waiver and to pursue a hearing. *Id.* Gibson does not contest this—nor could he given the clarity of the application form.

Recognizing this hurdle, Gibson instead argues that his application merely constituted an offer and that the Notice of Action, issued by the Commission three days later, constituted the acceptance of that offer. Dkt. 31 at 1–2. It was the combination of these events, in Gibson's

view, that gave rise to the contract that he seeks to enforce. That theory, however, does little to advance the ball. Gibson still cannot identify any document or other evidence that would allow the Court to find the required manifestation of intent on the part of the Parole Commission to enter into a contractual relationship with Gibson. This is unlike a case involving a guilty plea, for example, in which a representative of the government, the defendant, and her counsel sign an agreement. Indeed, the only document that Gibson signed expressly stated that it did "not constitute an enforceable agreement." Dkt. 26-3 at 1. The Notice of Action, moreover, bears all the hallmarks of a governmental decision—not a private agreement. It orders that Gibson be detained and then abide by specified conditions after his release. *Id.* at 3. And, although the Notice of Action refers to Gibson's acceptance of responsibility and agreement to a sentence of eight months or less, it does so only in the context of explaining the Commission's reasons for acting. *Id.* Given the express disavowal of an intention to enter into a binding agreement contained in the application form, the Court cannot conclude that the subsequent issuance of the Notice of Action constituted a legally sufficient manifestation of an intent to be bound. Any doubt about this conclusion, moreover, is put to rest by the further requirement that a party asserting a contract with the government must be able to demonstrate a "lack of ambiguity in offer and acceptance." *Anderson*, 344 F.3d at 1353.

Furthermore, for Gibson to prevail he must not only be able to show that the Parole Commission manifested an intention to be bound, but that it agreed to ensure Gibson's release on July 24, 2015. There is nothing, however, in Gibson's application or in the Commission's Notice of Action that would demonstrate such an undertaking. Gibson, after all, sought to participate in the SIS Program on the understanding that he would receive a sentence of no more than eight months. The Commission did not demand that much and, instead, ordered that he be

9

confined for period of four months. Although that was the term of incarceration it imposed, there is no evidence of a quid pro quo undertaking by the Commission to ensure that the DOC effectuated the terms of the Notice of Action and released Gibson at the end of the four-month period.

This is not to say that Gibson was without remedies. Had the Commission, for example, accepted Gibson's waiver and then ordered his incarceration for nine months, he might well have been able to invoke his right to a hearing or, perhaps, assert a due process claim. And, the Court is not passing today on Gibson's separate tort claims, which may (or may not) provide him with a remedy. All the Court holds today is that the undisputed facts demonstrate the Gibson did not enter into an enforceable contract with the Parole Commission in which it promised to ensure that Gibson was released on the date the period of incarceration specified in the Notice of Action expired.

This, then, leaves Gibson's request, pursuant to Rule 56(d), "that he be allowed to conduct discovery . . . before the Court rules" on this motion. Dkt. 31 at 3. That contention fails for three reasons. First, Gibson's request for discovery is limited to discovery relating to the "second" of the Department's defenses—that is, that no breach occurred. *Id*. at 1–2. The Court's decision, however, is premised exclusively on the Department's first defense—that is, that the parties never entered into the contract that Gibson asserts. *Id.* Second, Gibson has failed to comply with Rule 56(d), which requires that the "non[-]movant show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (explaining that to obtain discovery, "the movant must submit an affidavit which 'state[s] with sufficient particularity . . . why [additional] discovery [is] necessary'") (citation omitted).

Yet, Gibson has not submitted an affidavit or declaration, and he has not "specified" any "reasons" why he could not present essential facts relating to whether a contract was formed. Finally, it is difficult to discern what those reasons might be. If other documents were relevant, he was free to submit them to the Court, and he was free to submit his own declaration relating to events that he says gave rise to a contract. Instead of doing so, Gibson has simply argued that the Notice of Action gave rise to the asserted contract. For the reasons explained above, the Court concludes that no contract was made, and that Gibson has failed to identify any evidence that might change that conclusion.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that Counts II, III, and V of the Plaintiff's Amended Complaint, Dkt. 15, are **DISMISSED** without prejudice as against Defendants Department of Justice, Federal Bureau of Prisons, United States Parole Commission, Phyllis Baker, and Derrick Miller. It is further **ORDERED** that the Department of Justice's motion for summary judgment on Count I, Dkt. 26, is hereby **GRANTED**. Plaintiff's request for discovery under Rule 56(d) is hereby **DENIED.**

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 15, 2017